# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ROBERT DOWNEY,<br><br>        Plaintiff<br><br>v.<br><br>PENNSYLVANIA DEPARTMENT OF CORRECTIONS, et al,<br><br>        Defendants | CIVIL ACTION NO. 1:17-CV-143<br><br>(MEHALCHICK, M.J.) |

## **MEMORANDUM OPINION**

Plaintiff, Robert Downey ("Downey"), commenced this action on January 25, 2017, while incarcerated at State Correctional Institute Waymart (SCI Waymart). The events giving rise to his complaint occurred during the time of his incarceration at SCI Waymart. (Doc. 1 at 2-3, ¶¶ 5-6). Downey filed an amended complaint on January 26, 2017 (Doc. 3), and a second amended complaint on June 3, 2017. (Doc. 37). Downey seeks monetary relief pursuant to 42 U.S.C. § 1983 and 42 U.S.C. § 1988 for Eighth Amendment violations, multiple causes of action pursuant to Pennsylvania state law, and injunctive relief pursuant to 18 U.S.C. § 3626, to cease violations of the United States Constitution. (Doc. 37, ¶¶ 1-3). Defendants Jessica Ashby, Correct Care Solutions, Janan Loomis, Tom Lyons, David Tomazic and Jennifer Villano (collectively, the "Medical Defendants") moved for summary judgment on December 27, 2018. (Doc. 71). Defendants Paul DelRosso, Pennsylvania Department of Correction, and Jack Sommers (collectively, the "DOC Defendants") moved for summary judgment on January 28, 2019. (Doc. 76). Both sets of defendants move for summary judgment on the grounds that Downey failed to exhaust his administrative remedies

pursuant to the Prison Litigation Reform Act, 42 U.S.C. § 1997e. The motions were fully briefed, and oral argument was held on March 28, 2019. The motions are now ripe for review.

This case presents the unfortunate circumstance in which by virtue of filing a lawsuit one day before being released from prison, the Plaintiff is barred from recovery under the Prison Litigation Reform Act. Because he received the injunctive relief he sought, albeit after some time, there was no injunctive relief to grieve. But Plaintiff sought monetary damages, and those must also be grieved. When an inmate files a claim that is not grieved, and that grievance process has not been rendered unavailable, then this Court simply does not have jurisdiction to hear that claim. As such, judgment must be entered in Defendants' favor, and this case dismissed.

## I.   FACTUAL BACKGROUND AND PROCEDURAL HISTORY

The factual background is taken from Defendants' Statements of Undisputed Material Facts (Doc. 73; Doc. 77); Plaintiff's Response to Defendants' Statements of Undisputed Material Facts (Doc. 79; Doc. 92); and Plaintiff's Counterstatements of Facts (Doc. 80; Doc. 93), to the extent the facts are admitted or otherwise undisputed. Where the parties dispute certain facts, those disputes are noted. In addition, the facts have been taken in the light most favorable to the plaintiff as the non-moving party, with all reasonable inferences drawn in their favor. At argument, the parties agreed that the only fact in dispute is whether Downey's condition was one of an urgent or emergent nature such that the PLRA's requirement that he exhaust the grievance process would apply at all.

Downey was incarcerated within the Pennsylvania Department of Corrections on September 24, 2013 and transferred to SCI Waymart on January 22, 2014. (Doc. 73 at 1, ¶ 2; (Doc. 37 at 7, ¶ 33). At the time of his transfer to SCI Waymart, Downey had glaucoma

affecting both eyes. On January 26, 2015, Downey had an appointment with Dr. Roth, an ophthalmologist at Eye Care Specialists. (Doc. 73 at 2, ¶ 3). Dr. Roth referred Downey to Dr. Szulborski for a surgical consultation. Dr. Szulborski is an opthamologist that specialized in glaucoma procedures. (Doc. 79 at 2, ¶ 3 Doc. 81-1 at 44-49). Dr. Tozmic of SCI Waymart approved that order for the consult on January 27, 2015. (Doc. 79 at 3, ¶ 4; Doc. 81-3 at 86). On March 18, 2015, Downey saw Dr. Szulborski for a surgical consultation, at which point Dr. Szulborski ordered Downey to have glaucoma surgery on both of his eyes within two weeks. (*Id.*; Doc. 81-1 at 37-43; Doc. 81-5 at 4). Downey did not return to Eye Care Specialists until December 2, 2015. He ultimately underwent surgery to his left eye on December 16, 2015, and surgery to his right eye on February 2, 2016, but not before significant vision loss occurred in both eyes. (Doc. 73 at 2, ¶¶ 4-5; Doc. 79 at 3-4, ¶¶ 4-5).

Downey does not dispute that he did not grieve the prison conditions that serve as the basis for his complaint. (Doc. 73 at ¶ 6; Doc. 79 at ¶ 6). Rather, Downey contends his need for glaucoma surgery was urgent or emergent in nature, and therefore the prison grievance procedure is inapplicable to his claim. (Doc. 79 at ¶ 6). Indeed, Downey readily admitted in his deposition that he was aware of the grievance process, and that he purposefully chose not to file a grievance. (Doc. 72-2 at 60). Instead of filing a grievance at any point, Downey continued to visit sick call and inquire into the status of the surgery. (Doc. 79 at ¶ 6; Doc. 80). While Downey did not file complaints in accordance with the prison grievance procedure, he did file DC 135A Requests to Staff Members regarding the scheduling of his surgery in May, July, October, and November of 2015. (Doc. 79 at ¶ 7-8; Doc. 72-7). These requests did not include any request for relief other than the scheduling of the surgery.

Downey was released from prison on January 26, 2017, nearly a year after his surgeries were complete, and just one day after filing his initial complaint in this Court. (Doc. 73 at ¶ 11; Doc. 79 at ¶ 11).

## II.    SUMMARY JUDGMENT STANDARD

To prevail on a motion for summary judgment, the moving party must show that "there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is material if proof of its existence or nonexistence might affect the outcome of the suit under the applicable substantive law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Where there is no material fact in dispute, the moving party need only establish that it is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). Where, however, there is a disputed issue of material fact, summary judgment is appropriate only if the factual dispute is not a genuine one. *Anderson*, 477 U.S. at 248. An issue of material fact is genuine if "a reasonable jury ... could find for the nonmoving party." *Childers v. Joseph*, 842 F.2d 689, 693-94 (3d Cir. 1988). "[T]his standard provides that the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no ***genuine*** issue of ***material*** fact." *Anderson*, 477 U.S. at 247-48 (1986) (emphasis in original).

A federal court should grant summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Farrell v. Planters Lifesavers Co.,* 206 F.3d 271, 278 (3d Cir. 2000). In making this determination, "a court must view the facts in the light most favorable to the

nonmoving party and draw all inferences in that party's favor." *Armbruster v. Unisys Corp.*, 32 F.3d 768, 777 (3d Cir. 1994). The Court need not accept mere conclusory allegations, whether they are made in the complaint or a sworn statement. *Lujan v. National Wildlife Federation*, 497 U.S. 871, 888 (1990). In deciding a motion for summary judgment, the court's function is not to make credibility determinations, weigh evidence, or draw inferences from the facts. *Anderson*, 477 U.S. at 249. Rather, the court must simply "determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 249. However, "unsupported assertions, conclusory allegations, or mere suspicions" are insufficient to overcome a motion for summary judgment. *Schaar v. Lehigh Valley Health Servs., Inc.*, 732 F.Supp.2d 490, 493 (E.D.Pa. 2010) (*citing Williams v. Borough of W. Chester*, 891 F.2d 458, 460 (3d Cir. 1989)); *see also Matsushita Elec. Indus. Co., v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) (noting that the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts").

Pursuant to the Federal and Local Rules of Civil Procedure, the Court accepts as true all factual statements which plaintiff does not dispute. *See Hodge v. United States*, No. 3: 06-CV-1622, 2009 WL 2843332, *13 (M.D. Pa. August 31, 2009). As to the facts which are disputed regarding PLRA exhaustion, the court weighs the testimony and evidence presented at the oral hearing, and makes judgments as needed. *Hill v. Smith*, 186 Fed. Appx. 271, 273-74 (3d Cir. 2006). An evidentiary hearing before the bench is the appropriate venue to decide an exhaustion dispute. *Paladino v. Newsome*, 885 F.3d 203, 210-11 (3d Cir. 2018) (citing *Small v. Camden County*, 728 F.3d 265, 267-68 (3d Cir. 2013)).

### III. PLRA EXHAUSTION REQUIREMENT

In 1996, Congress enacted the Prison Litigation Reform Act of 1995 ("PLRA"). 42 U.S.C. § 1997. The PLRA mandates that prisoners exhaust all available administrative remedies prior to initiation of a suit under § 1983 for a deprivation of Constitutional rights. 42 U.S.C. § 1997(a). Two of the principal purposes of the PLRA are: "(1) affording corrections officials time and opportunity to address complaints internally before the initiation of a federal lawsuit; and (2) reducing the quantity, and improving the quality, of prison litigation." *Woodford v. Ngo*, 548 U.S. 81, 114 (2006); see also *Concepcion v. Morton*, 306 F. 3d 1347, 1354 (3d Cir. 2002) (quoting *Booth v. Churner*, 532 U.S. 731, 737 (2001) (requiring inmates to grieve for monetary relief when prison procedures do not provide for any and discussing a practical consideration which may satisfy an inmate, the satisfaction of having one's complaint heard, even if he does not receive any money).

Previously discretionary, the PLRA made unexhausted claims unreviewable by the District Courts. *See Booth v. Churner*, 532 U.S. 731, 739 (2001). Even where the relief sought is unavailable through administrative remedies, prisoners must pursue their claims through prison channels prior to initiation of litigation in federal courts. *See Woodford*, 548 U.S. at 85. Further, inmates must see their complaints through to the final review possible under the administrative review system in place. *Woodford*, 548 U.S. at 93. Claims not made within the parameters set forth by the prisons, and therefore not reviewed on the merits, are considered procedurally defaulted. *Spruill v. Gillis*, 372 F.3d 218, 227-32 (3d Cir. 2004). This "exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other

wrong." *Porter v. Nussle*, 534 U.S. 516, 532 (2002). The exhaustion requirement is mandatory; indeed "it is beyond the power of [any] court ... to excuse compliance with the exhaustion requirement." *Nyhuis v. Reno*, 204 F.3d 65, 73 (3d Cir. 2000) (quoting *Beeson v. Fishkill Corr. Facility*, 28 F. Supp. 2d 884, 894-95 (S.D.N.Y. 1998)). Courts are precluded from considering unexhausted or procedurally defaulted claims. *Spruill*, 372 F.3d at 227-32. The Supreme Court held "[w]hen an administrative process is susceptible of multiple reasonable interpretations, Congress has determined that the inmate should err on the side of exhaustion." *Ross v. Blake*, 136 S. Ct. 1850, 1859 (2016). In *Ross*, the Supreme Court concluded that, even where a prisoner may face special circumstances, such as an internal investigation into his claims, the mandatory language of the PLRA means a court may not excuse a failure to exhaust, even to take such circumstances into account. *Ross*, 136 S. Ct. at 1856–57. The Supreme Court has repeatedly declined to carve out exceptions into statutory exhaustion requirements, making no distinction based upon particular forms of relief sought and offered. *Ross*, 136 S. Ct. at 1857; citing *Booth*, 532 U.S. at 741; *Porter v. Nussle*, 534 U.S. 516 (2002) (rejecting a proposal to carve out excessive-force claims from the PLRA's exhaustion regime); *Woodford*, 548 U.S. at 91.

Medical treatment received by an inmate is considered a prison condition. *Stewart v. Kelchner*, 358 Fed. Appx. 291, 296-97 (3d Cir. 2009). Proper exhaustion of administrative remedies requires substantial compliance with the rules of the internal prison grievance process, which are defined by the prison, not the PLRA. *Jones v. Bock*, 549 U.S. 199, 218 (2007); *Small*, 728 F.3d at 271; *Spruill*, 372 F.3d 218 at 231. An inmate cannot excuse a failure to timely comply with these grievance procedures by simply claiming that his efforts

constituted "substantial compliance" with this statutory exhaustion requirement. *Harris v. Armstrong*, 149 Fed. Appx. 58, 59 (3d Cir. 2005).

Further, and of particular import in this case, a plaintiff's status as a prisoner for purposes of the PLRA is judged as of the time he files his original complaint. The exhaustion requirements of the PLRA continue to apply even if a plaintiff files an amended complaint after being released from prison. See *Defreitas v. Montgomery County Corr. Facility*, 525 Fed. Appx. 170, 176 (3d Cir. 2013); *Ahmed v. Dragovich*, 297 F.3d 201, 210 (3d Cir. 2002).[1] As such,

---

[1] There is some disagreement among the Circuits as to when the exhaustion requirements of the PLRA apply to amended complaints filed after an inmate is released from prison. The Third Circuit has maintained that the exhaustion requirements of the PLRA apply even if the plaintiff files an amended complaint after being released from prison, and the Sixth and Eleventh Circuits agree. See *Cox v. Mayer*, 332 F.3d 422, 425 (6th Cir. 2003) (holding that "plaintiff was required to exhaust any available administrative remedies before he filed suit" and "his suit must be dismissed" even though plaintiff was no longer incarcerated, and noting that the plaintiff had not exhausted any of his claims before filing suit); *Harris v. Garner*, 216 F.3d 970, 974 (11th Cir. 2000) (en banc) (holding that the term "brought" in 42 U.S.C. § 1997e referred to the filing of the action). However, the Ninth Circuit has held that exhaustion requirements apply based on when a plaintiff files the operative complaint, and therefore an amended complaint brought by a plaintiff after he is released is not subject to those requirements. *Jackson v. Fong*, 870 F.3d 928, 935 (9th Cir. 2017). The court in *Jackson* looks to the Seventh Circuit's decisions in *Barnes v. Briley*, 420 F.3d 673, 678 (7th Cir. 2005) (finding that "[t]he filing of the amended complaint was the functional equivalent of filing a new complaint, and it was only at that time that it became necessary to have exhausted the administrative remedies against the state defendants") and *Cannon v. Washington*, 418 F.3d 714, 719 (7th Cir. 2005) (allowing a prisoner to raise fully exhausted claims by amending a complaint in the pending civil rights litigation), but this Court notes that those Seventh Circuit decisions do not address the issue of a plaintiff being released from prison and *then* filing an amended complaint. Further, the plaintiffs in both cases were attempting to assert properly exhausted claims in their amended complaints.

The court in *Jackson* also notes that "[o]ur sister circuits might well decide these cases differently today" citing *Mitchell v. Dodrill*, 696 F.Supp.2d 454, 465 (M.D. Pa. 2010) and *Jackson v. Gandy*, 877 F.Supp.2d 159, 175 (D.N.J. 2012). However, in *Mitchell*, the Court
*(footnote continued on next page)*

because Downey initiated the instant lawsuit while in prison, he must comply with the PLRA exhaustion requirements.

The burden to plead and prove failure to exhaust as an affirmative defense rests on the defendant. *Ray v. Kertes*, 285 F.3d 287, 295 (3d Cir. 2002); *see also Washington-El v. Collins*, No. 3:12-CV-1979, 2016 WL 5338709, *7-8 (M.D. Pa. June 21, 2016) (stating defendants must carry "burden of proof and persuasion" when asserting affirmative defense of failure to exhaust administrative remedies). "But once the defendant has established that the inmate failed to resort to administrative remedies, the onus falls on the inmate to show that such remedies were unavailable to him." *Rinaldi v. United States*, 904 F.3d 257, 268 (3d Cir. 2018) (citing *Tuckel v. Grover*, 660 F.3d 1249, 1253-54 (10th Cir. 2011)). Administrative remedies are considered unavailable if the inmate is unable to use them. *See Small*, 728 F.3d at 272.

"Available" is defined as "capable of use for the accomplishment of a purpose" and that which "is accessible or may be obtained." *Ross*, 136 S. Ct. at 1858-59; quoting *Booth*, 532

---

considered an amended complaint to be the operative pleading for purposes of determining exhaustion *after* the court consolidated two actions and then directed the filing of the amended complaint by a plaintiff who remained incarcerated. By comparison, in *Jackson v. Gandy*, the district court determined that a plaintiff who was a prisoner when he filed his original complaint was subject to an exhaustion defense even after amending complaint post-release. Like *Barnes* and *Cannon,* the *Mitchell* case, addresses the issue of an amended complaint being filed by a plaintiff who is still incarcerated, but has exhausted additional claims following the filing of an initial complaint, and wishes to add newly exhausted claims to his suit. This is a situation distinguishable from the facts in this case, where the plaintiff never filed a grievance or exhausted any claims, files an initial complaint, is then released from prison, and then files an amended complaint.

U.S. at 737-38. There are three circumstances in which the PLRA may not be "available" to a prisoner:

> (1) when it operates as a simple dead end, with officers unable or consistently unwilling to provide any relief to aggrieved inmates; (2) when it is so opaque that it becomes, practically speaking, incapable of use, such as when no ordinary prisoner can discern or navigate it; or (3) when prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation.

*Rinaldi v. United States*, 904 F.3d 257 (3d Cir. 2018).

Inmates incarcerated with the Pennsylvania Department of Corrections have the following administrative grievance process available to them:

> The DC-ADM 804 grievance system consists of three separate stages. First, the prisoner is required to timely submit a written grievance for review by the facility manager or the regional grievance coordinator within fifteen days of the incident, who responds in writing within ten business days. Second, the inmate must timely submit a written appeal to intermediate review within ten working days, and again the inmate receives a written response within ten working days. Finally, the inmate must submit a timely appeal to the Central Office Review Committee, also known as the Secretary's Office of Inmate Grievances and Appeals ("SOIGA"), within fifteen working days, and the inmate will receive a final determination in writing within thirty days. See *Booth v. Churner*, 206 F.3d 289, 293 n.2 (3d Cir. 1997), *aff'd*, 532 U.S. 731 (2001). DC-ADM 804 provides that the grievance must include "a statement of the facts relevant to the claim," "shall identify individuals directly involved in the events," and "shall specifically state any claims he wishes to make concerning violations of Department directives, regulations, court orders, or other law." DC-ADM 804, § 1(A)(11).

*Hughes v. Hayes*, 2018 WL 6697184 at *4 (W.D. Pa. Dec. 20, 2018); (Doc. 26 at 1, ¶ 3); (Doc. 40 at 2, ¶ 3).

The DC-ADM 804 notes that the grievance system is not meant to address "incidents of an urgent or emergency nature" and specifically requires the inmate to contact the nearest staff member for assistance when facing such an incident.

## IV. DISCUSSION

As noted, it is undisputed that Downey did not proceed with any grievance procedures mandated under DC-ADM 804 prior to filing this lawsuit. It is further undisputed that Downey was aware of the grievance policy, and chose not to avail himself of that policy. (Doc. 72-2 at 60). Instead, Downey submits that (1) the administrative exhaustion requirements were not applicable because he believed his condition to be urgent and emergent, and thus excused from the grievance requirements; (2) once he received the surgery, there was nothing left to grieve and no further remedies available; and (3) he was not required to grieve a solely monetary remedy. Alternatively, Downey requests that the case be stayed so that he can properly exhaust his administrative remedies.

### A. DOWNEY'S CLAIMS FOR INJUNCTIVE AND DECLARATORY RELIEF ARE MOOT.

Although a significant portion of the argument in the briefs on the motions for summary judgment and at oral argument was spent on the issue of whether Downey's glaucoma and need for surgery was an urgent or emergent situation, that question is a non-issue at this juncture, as Downey ultimately received the surgery, rendering that relief unavailable. As such, there is no longer a question as to whether Downey had to grieve the delay in scheduling the surgery; he received the remedy for that delay. Moreover, to the extent Downey seeks declaratory relief through a Court finding that Defendants violated his federal constitutional rights and injunctive relief requiring Defendants to have and to follow protocols and regulations about medical care and surgery (Doc. 37 at 21), these claims are moot. See *Johnson v. Wireman*, No. 1:15-CV-02254, 2019 WL 1383575, at *4 (M.D. Pa. Mar. 27, 2019). "[A] federal court has neither the power to render advisory opinions nor to decide questions

that cannot affect the rights of litigants in the case before them." *Sutton v. Rasheed*, 323 F.3d 236, 248 (3d Cir. 2003) (quoting *Preiser v. Newkirk*, 422 U.S. 395, 401 (1975)); see also *Abdul-Akbar v. Watson*, 4 F.3d 195, 206 (3d Cir. 1993). As noted, Downey was released from prison after he initiated this action, rendering his claims for prospective injunctive or declaratory relief moot. See *Cobb v. Yost*, 342 Fed. App'x 858, 859 (3d Cir. 2009) (per curiam); *Ilarraza v. Chuta*, Civil Action No. 1:15-cv-2406, 2017 WL 1246363, at *3 (M.D. Pa. Feb. 10, 2017), *report and recommendation adopted by* 2017 WL 1208347 (M.D. Pa. Apr. 3, 2017). Accordingly, those claims are *sua sponte* dismissed as moot pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure.[2]

---

[2] Although it is not necessary to reach the issue of whether Downey's situation was "urgent or emergent" such that he was not required to utilize the grievance system, the Court notes that no party was able to produce case law which supports or contradicts the theory that the DC-ADM 804 language excepting urgent and emergency situations applies. The case law interpreting this phrase is analyzed in the context of sexual harassment and abuse claims. Further, the Court finds Defendants' arguments on this issue compelling – that the language is there to put an inmate on notice that he should not wait to file a grievance if facing an emergency matter. Moreover, although the language in the DC-ADM 804 directs that an inmate should make every effort to resolve concerns prior to filing a grievance, "when an inmate has a concern that he/she is unable to resolve, the inmate **must** submit his/her grievance… using the DC-ADM 804, Part 1." (Doc. 72-4 at 6; Doc. 72-5 at 4)(emphasis added). Downey himself recognized that the grievance process was available to him at any point during the period of time when he was first ordered to have surgery, until the time he had the surgery, through year following his surgery until his release from prison. He chose not to use it. Moreover, following the surgery, there can be no argument that an urgent or emergency situation existed such that Downey would be exempt from the grievance process.

B. Downey's claim for monetary damages is procedurally defaulted.

Downey's claim for monetary damages remains before the Court, however, and with that claim, the question of whether he had to grieve the monetary damages he seeks prior to filing this federal lawsuit. Downey contends that following the surgery, "[t]here were no remedies left; the damage was done. No administrative remedies were available and the grievance process was a fruitless endeavor." (Doc. 81 at 18). Downey avers that 42 U.S.C. § 1997e and the Inmate Handbook and Grievance Policy do not require the grievance of a solely monetary remedy. The Court does not agree.

First, both versions of the grievance policy in place during Downey's incarceration required that "[i]f the inmate desires compensation or other legal relief normally available from a court, the inmate must request the specific relief sought in his/her initial grievance." (Doc. 77-5 at 8, ¶ 12.d.; Doc. 77-6 at 6, ¶ 11.d.). The DOC's policy requires an inmate to specifically request monetary relief in an initial grievance; where the inmate fails to do so, his claim for money damages is procedurally defaulted. *Wright v. Sauers*, 729 F. App'x 225, 226 (3d Cir. 2018). Even if the Court were to consider the medical requests made by Downey to be a form of grievance, those requests did not include a request for monetary compensation. See *Camacho v. Beers*, Civil Action No. 16-1644, 2018 WL 6618410, at *2–*3 (W.D. Pa. Dec. 18, 2018) (finding plaintiff's statement in initial grievance "asking for relief as allowed by law" did not "request the specific relief of monetary compensation").

The grievance policy in place clearly requires that request to be made in an initial grievance. As such, Downey's claim that he was not required to grieve solely a monetary remedy is incorrect, and his claims for monetary damages are procedurally defaulted.

13

Downey's claims for money damages against the Defendants are barred. See *Wright*, 729 Fed. App'x at 227; *Krushin v. SCI Waymart*, Civil No. 4:17-CV-1545, 2019 WL 1141691, at *3 (M.D. Pa. Jan. 29, 2019); *Camacho*, 2018 WL 6618410, at *2–*3; *Sanders v. Beard*, Civil Action No. 3:09-CV-1384, 2013 WL 2650215, at *4 (M.D. Pa. June 13, 2013).

## V. CONCLUSION

The Court is compelled to grant Defendants' motions for summary judgment, as Downey failed to exhaust his administrative remedies as required by the Prison Litigation Reform Act. Although if had he waited one day to file his original complaint, Downey would not be bound by the requirements of the PLRA, that is not what happened here. Instead, Downey initiated this action while still an inmate. He did so after not filing any grievances related to the delays in surgery or as to money damages. He has not alleged, and the record does not reflect, that the grievance process was at any time rendered unavailable to him. This Court is without discretion to bypass the exhaustion requirement, and the Supreme Court and Third Circuit have repeatedly declined to carve out exceptions to that requirement, or permit lower courts to do so.

Based on the foregoing, Defendants' motions for summary judgment (Doc. 71; Doc. 76) are granted as to Downey's federal claims. The Court declines to exercise supplemental jurisdiction over any remain state law claims, and those claims are dismissed without

prejudice to Downey pursuing them in state court.³ Finally, Downey's request for a stay is denied (Doc. 81 at 20), as the Court finds that Downey is no longer subject to the grievance process, and therefore he is unable to pursue or exhaust that process. Any stay of these proceedings so that he could exhaust would be futile. Downey has not provided any argument or support for the contention that he would be able to do so.

An appropriate Order will follow.

Dated: May 17, 2019

*s/ Karoline Mehalchick*
**KAROLINE MEHALCHICK**
**United States Magistrate Judge**

---

³ Where a district court has dismissed all claims over which it had original jurisdiction, it may decline to exercise supplemental jurisdiction over state law claims. 28 U.S.C. § 1367(c)(3). Whether a court will exercise supplemental jurisdiction is within its discretion. *Kach v. Hose*, 589 F.3d 626, 650 (3d Cir. 2009). That decision should be based on "the values of judicial economy, convenience, fairness, and comity...." *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 (1988). Ordinarily, when all federal law claims have been dismissed and only state law claims remain, the balance of these factors indicates that the remaining claims properly belong in state court. *Cohill*, 484 U.S. at 350. The Court finds nothing in the record to distinguish this case from the ordinary one, and thus the balance of factors "point toward declining to exercise jurisdiction over the remaining state law claims." See *Cohill*, 484 U.S. at 350 n.7.